UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ZIMMER, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 3:14-CV-152 JD |
| | ) |
| STRYKER CORPORATION, | ) |
| HOWMEDICA OSTEONICS CORP. d/b/a | ) |
| STRYKER ORTHOPAEDICS and | ) |
| CODY STOVALL, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on "Stryker's Appeal of Magistrate Judge Christopher A. Nuechterlein's Order Regarding Plaintiff's Motion to Compel a Rule 30(b)(6) Deposition," filed by Defendants, Stryker Corporation and Howmedica Osteonics Corp. (collectively "Stryker"), on March 7, 2016 [DE 105]. The Court has reviewed Magistrate Judge Christopher A. Nuechterlein's order [DE 100] and, for the reasons set forth below, Stryker's appeal [DE 105] is **DENIED**. Additionally, the Court **ORDERS** Stryker to file with the Court on or before **June 2, 2016**, a verified Statement explaining why the Court should not award Zimmer its reasonable expenses (including attorneys' fees and costs) in bringing the motion to compel and defending Stryker's appeal of the Magistrate Judge's Order under Rule 37(a)(5)(C). Any response by Zimmer shall be filed on or before **June 16, 2016.**

Background

Plaintiff, Zimmer, Inc. ("Zimmer") and Stryker are commercial competitors in the orthopaedic implant industry. Zimmer filed this lawsuit on January 29, 2014, against Defendant,

Cody Stovall ("Stovall") and Stryker. The Magistrate Judge aptly described the factual background as follows:

> In the operative amended complaint filed in September 2014, Zimmer alleges Stryker engaged in unfair competition and tortious interference with contracts and business relationships by hiring Zimmer sales representatives, including Stovall, and assigning them to "sell" a supposedly "non-competitive" Stryker product called Vitagel in their former Zimmer territories, with the ultimate goal of converting joint implant business from Zimmer to Stryker. Zimmer also alleges that Stovall, a former Zimmer employee bound by post-employment restrictive covenants, breached his contractual and fiduciary obligations to Zimmer by poisoning and converting certain Zimmer customer relationships before resigning to join Stryker.

[DE 100 at 2].

In the complaint, Zimmer alleges as damages the loss of two primary customers, Drs. North and Risko, and potential loss of future customers in Amarillo, Texas [DE 1]. On September 3, 2014, Zimmer filed the amended complaint asserting the same claims against Stovall and Stryker (with the exception of civil conspiracy which had been dismissed with prejudice [DE 48]), and now alleging that Stryker had similarly implemented the same Vitagel scheme across the country [DE 51]. In support of the alleged scheme, Zimmer referenced individuals hired by an independent distributor, CrossLink Orthopaedics Inc. (hereinafter "CrossLink") [DE 51]. The CrossLink hires, Jay Barnhardt, III ("Barnhardt"), Christopher Terrell ("Terrell"), Cameron Leon Dickerson ("Dickerson"), and William Whilden ("Whilden") (collectively, the "CrossLink Employees"), were located not in Amarillo, Texas, but in South Carolina and Georgia [DE 51].

According to Stryker, for two years, the parties engaged in discovery in this case including document exchanges, ESI discovery, and eighteen depositions, including all the CrossLink Employees, CrossLink's President Thomas Fleetwood ("Fleetwood"), and seven

2

Stryker employees [DE 105-1 at 2]. Stryker sets forth a summary of the previous discovery as follows: the seven Stryker employees testified about the hiring of Stovall and Stryker's position with respect to him selling Vitagel in the Amarillo territory [DE 84, Exs. F & G; DE 93, Exs. 1-4, 20]. Stryker's Vice President of Sales, Charlie O'Brien ("O'Brien"), further testified regarding their lack of involvement with the CrossLink Employees [O'Brien Dep. pp. 74-75, 79-81, excerpts filed under seal as Exhibit B]. Fleetwood and the CrossLink Employees testified that Stryker had no involvement with the recruitment, interviewing, or decision to hire the CrossLink Employees, did not opine on the territory placement or product assignment, and did not review or advise on any non-compete or other contractual obligations that the CrossLink employees may have been bound by [DE 84, Exs. D & E; DE 93, Exs. 8, 14-17]. Thus, Stryker claims that despite extensive discovery, Zimmer did not uncover any evidence to support their Vitagel conspiracy theory.

Zimmer initially served its notice of Rule 30(b)(6) deposition on Stryker over 2 years ago, in February 2014 [DE 100 at 2]. The original notice had 16 topics. [*Id.*] After Stryker informally objected to the breadth of the noticed topics, and at Stryker's request, Zimmer agreed to delay the 30(b)(6) deposition until completion of all other fact discovery in order to either eliminate the need for a 30(b)(6) deposition, or to narrow the topics [DE 100 at 2]. During discovery, when Zimmer attempted to obtain information about Stryker's business practices from Stryker employees, Stryker's counsel objected and instructed the witnesses to testify as to each witnesses' personal knowledge only [DE 86 at 3-5; DE 100 at 203]. Thus, Zimmer claims it has not obtained any deposition testimony from a corporate representative of Stryker, a party-defendant in this case [DE 107 at 2]. Just days after the deposition of Stryker's Vice President of

Sales who was instructed to testify only in his personal capacity, Zimmer re-noticed the Rule 30(b)(6) deposition [DE 86 at 4-5]. The amended notice reduced the topics from 16 to 6. [*Id.*].

Zimmer issued the amended Rule 30(b)(6) notice requesting that Stryker produce a corporate representative(s) for the following topics:

> 1. Christopher A. Smith's ("Smith") planned and actual duties and responsibilities with Stryker for the time during which he was subject to restrictive covenants with Zimmer, including but not limited to, job titles, territories, customer lists, product and/or business unit assignments, and activities Smith had undertaken on behalf of Stryker since starting with Stryker.
>
> 2. Stryker's policies and procedures, if any, to ensure its employees and independent contractors do not violate restrictive covenants to their former employers: (1) generally; and (2) specifically relating to Defendant Cody Stovall ("Stovall") and Smith.
>
> 3. Stryker's policies and procedures, if any, to ensure employees and independent contractors of its distributors do not violate restrictive covenants to their former employers: (1) generally; and (2) specifically relating to Crosslink; and (3) specifically relating to William Whilden, Cameron Dickerson, Christopher Terrell, and Jay Barnhardt, III.
>
> 4. The actions Stryker took or attempted to take, if any to ensure Stovall, Smith, Whilden, Dickerson, Terrell, and Barnhardt did not violate the Zimmer Agreements, including, but not limited to, Stryker's contentions regarding whether those individuals' employment with Stryker and Crosslink was compliant with the Zimmer Agreement, and if so, how.
>
> 5. Whether and under what circumstances Stryker contends it is a violation of a sales representative's duty of loyalty and/or non-competition or non-solicitation covenants for a sales representative to:
>
>> a. Discuss new competitive employment opportunities with one or more surgeon customer(s);
>>
>> b. Discuss with a surgeon customer whether or not the surgeon customer would use a competitor's products if the sales representative left his or her employment and joined the competitor;
>>
>> c. Solicit one or more surgeon customer(s) to consider purchasing products from a competitor;

d. Represent to a surgeon customer that the sales representative's current employer is unable to service that customer's business;

e. Take a vacation with a surgeon customer while subject to restrictive covenants prohibiting the sales representative from soliciting business from that surgeon customer; and

f. Come up with a personal reason to meet with a surgeon customer while subject to restrictive covenants prohibiting the sales representative from soliciting business from that surgeon customer.

6. Whether Stryker contends Stovall violated his duty of loyalty or non-competition and non-solicitation covenants to Zimmer while he was still working for Zimmer, and why or why not.

[DE 81-1 at 5-6].

Stryker did not produce a Rule 30(b)(6) witness on the noticed topics. As noted by the Magistrate Judge, Stryker did not refuse to produce a 30(b)(6) witness, but rather has identified Stryker's Vice President O'Brien as the witness and objects to the scope of the six noticed topics [DE 100 at 6]. Stryker claims the topics are irrelevant, duplicative of other discovery, privileged, or otherwise improper.

Zimmer filed a motion to compel on November 18, 2015 [DE 80]. On February 22, 2016, the Magistrate Judge entered a 16-page Order granting in part and denying in part Zimmer's Motion to Compel a 30(b)(6) deposition on the topics noticed by Zimmer on October 26, 2015 [DE 100]. The Magistrate Judge found that:

> Topics 1-4 in its Notice of Rule 30(b)(6) deposition of Stryker are relevant, non-duplicative, and non-privileged to the extent they do not require disclosure of the legal conclusions used by Stryker's counsel to justify Stryker's asserted defenses. Similarly, Topics 5 and 6 are discoverable to the extent they seek testimony about Stryker's contentions related to the conduct of Stovall and Stryker and the restrictive covenants specifically alleged in Zimmer's amended complaint. However, Stryker's rationale for its contentions constitutes privileged opinion work product that is not discoverable.

5

[DE 100 at 14-15].

Stryker filed the instant motion to appeal the Magistrate Judge's order, contending he erred in overruling Stryker's objections to the deposition topics because the requests are overbroad, unduly burdensome, duplicative and protected by attorney-client and work product privileges. Zimmer filed a response in opposition, arguing that the Magistrate Judge did not make a factual mistake or misapply relevant case law; therefore, his opinion should be affirmed [DE 107]. Additionally, Zimmer requests the Court award Zimmer its attorneys' fees and costs incurred in bringing the original motion to compel, as well as the attorneys' fees and costs incurred in responding to Stryker's appeal [DE 107 at 12-13]. Stryker filed a reply on March 23, 2016 [DE 108]. Consequently, this motion is fully briefed and ripe for adjudication.

## Discussion

Stryker brings this appeal under Federal Rule of Civil Procedure 72(a). This Court's review of orders on non-dispositive matters made by magistrate judges is governed by Rule 72(a) of the Federal Rules of Civil Procedure. Rule 72(a) provides that, "[t]he district court judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). "The district court reviews the magistrate's factual determinations under the 'clear error' standard, and the legal determinations under the 'contrary to law' standard." *Lafayette Life Ins. Co. v. City of Menasha*, No. 4:09-cv-64-TLS, 2010 WL 1138973, at *1 (N.D. Ind. Mar. 17, 2010) (citations omitted), *rev'd on other grounds*, 627 F.3d 261 (7th Cir. 2010).

"The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been

6

made." *Weeks v. Samsung Heavy Indus. Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). "Clear error is an extremely deferential standard of review, and will only be found to exist where the 'reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)). In conducting this review, this Court does not ask whether the finding is the best or only permissible conclusion, nor does it substitute its own conclusions for the magistrate judge's. *Herz v. Diocese of Fort Wayne-S. Bend, Inc.*, No. 1:12-cv-112 RM, 2012 WL 3870528, at *1 (N.D. Ind. Sept. 5, 2012).

An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *In re Fedex Ground Package Sys., Inc.*, No. 3:05-MC-527, 2009 WL 5217341, at *3 (N.D. Ind. Dec. 28, 2009) (citation omitted). The district court exercises broad discretion in determining whether to compel discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).

Motion to Compel 30(b)(6) Deposition

Stryker claims that the Magistrate Judge's order was factually erroneous with respect to the 30(b)(6) deposition notice topics 1-4. A factual finding is clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573.

Topic 1 - Christopher Smith's Duties and Responsibilities at Stryker

First, Stryker contends that because Zimmer concedes it suffered no damages in Christopher Smith's territory, any testimony related to Smith's employment with Stryker is "unnecessary and irrelevant." [DE 105-1 at 6]. Yet, the Magistrate Judge correctly recognized

7

that in its complaint, Zimmer identified Smith as one of the first sales representatives allegedly used by Stryker to implement its Vitagel scheme to entice Zimmer customers across the country to Stryker [DE 100 at 6].  The Magistrate Judge noted that Zimmer "does not dispute Stryker's conclusion about the lack of lost sales in Smith's territory" [DE 100 at 6]; but nevertheless found that "Zimmer's unfair competition and tortious interference claims include allegations of broader damages resulting from Stryker's overarching Vitagel scheme." [*Id.* at 7].   This Court concurs that because Stryker allegedly used Smith as part of the Vitagel scheme, the circumstances of his employment with Stryker are relevant to those overarching tort claims.

       <u>Topics 2 and 3 - Stryker's Policies and Procedures Related to Competitive Hiring</u>

       Stryker complains the Magistrate Judge erred in compelling Stryker to produce a witness related to its policies and procedures for two main reasons - first, Zimmer did not allege in its complaint that Stryker violated its own policies and intentionally created policies to circumvent restrictive covenants; and second, the topic is overbroad [DE 105-1 at 6-7].

       However, as noted by the Magistrate Judge, Zimmer claims Stryker engaged in a nationwide scheme to illegally convert joint implant business from Zimmer to Stryker [DE 100 at 2].  The Magistrate Judge specifically found that "Stryker's general policies and procedures regarding compliance with competitors' non-compete agreements bear on whether Stryker violated its own policies, intentionally created policies to circumvent restrictive covenants, directed distributors' conduct, and had a legitimate business justification for its actions." [*Id.* at 8].  Therefore, because "Stryker's competitive hiring practices are at the heart of this case, Zimmer's inquiries in Topics 2 and 3 are relevant." [DE 100 at 8].  The Court agrees that Zimmer need not have specifically alleged in its complaint that Stryker violated its own policies and

8

intentionally created policies to circumvent restrictive covenants. "Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand." *Norco Indus., Inc. v. CPI Binani, Inc.*, No. 2:12-cv-313, 2012 WL 6508624, at *1 (N.D. Ind. Dec. 13, 2012).

While Stryker argues the topic is overbroad because "Stryker's policies related to competitive hires vary significantly depending [on a number of factors]" [DE 105-1 at 6-7], Stryker admits to maintaining relevant policies, and concedes that at least as to co-defendant Cody Stovall, the policies are relevant to Zimmer's claims [*Id.*]. The Magistrate Judge committed no error in finding testimony related to the policies is relevant to how Stryker developed and implemented the allegedly tortious Vitagel scheme.

Topics 3 and 4 - Stryker's Policies and Procedures Related to Independent Distributors

Stryker first contends this topic amounts to a "fishing expedition based merely on theory and speculation" because there is no evidence that such policies exist [DE 105-1 at 8]. This Court concurs with the argument set forth by Zimmer - that if these policies do exist, they are relevant to the case, and yet Zimmer has had no way of knowing whether the policies actually exist because discovery on this topic has been stalled [DE 107 at 8]. The simple purpose of a discovery deposition is to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b). The Court concurs with the Magistrate Judge's finding that Stryker's policies and procedures are relevant to the claims of unfair competition and tortious interference [DE 100 at 8].

Stryker also claims that the topics are burdensome and overbroad [DE 105-1 at 8]. Considering Zimmer's allegations that Stryker instituted a nationwide scheme to illegally convert

9

business from Zimmer to Stryker, whether Stryker maintains policies to ensure compliance with non-compete agreements by independent contractors of its distributors, and whether Stryker took or attempted to take action to ensure compliance with those policies, are questions that are relevant to the elements of Zimmer's claims.

Stryker emphasizes that the Magistrate Judge incorrectly found there was "contradictory evidence already produced during discovery about the level of control Stryker maintained related to Crosslink's agents" [DE 100 at 9]. Yet Zimmer did point to evidence in its briefing of the motion to compel that suggests Stryker exercised at least some control over its distributors' hiring practices. For example, Zimmer paraphrases previous testimony as: a contract showed that Stryker and CrossLink negotiated a plan under which Stryker would reimburse CrossLink for paying salaries to Vitagel sales representatives; Tom Fleetwood (CrossLink's principal) testified he consulted Stryker before hiring Vitagel sales representatives; Charlie O'Brien (Stryker's Vice President of Sales) said he likely agreed to directly pay CrossLink for hiring the sales representatives at issue; Stryker received revenue streams from CrossLink's sale of Stryker products; Stryker referred to CrossLink as its "exclusive agent" in prior briefing; and the timing of CrossLink's use of the Vitagel scheme following Stryker's assignment of Vitagel to Chris Smith [DE 86 at 2; DE 107 at 9]. This is ample proof that further discovery is warranted to flush out the level of control Stryker maintained over CrossLink's agents. The Magistrate Judge did not err in finding the existence of contradictory evidence.

Regarding Topic 4, Stryker also argues that testimony from a Stryker representative related to actions Stryker took to ensure Stovall, Smith, Whilden, Dickerson, Terrell, and Barnhardt did not violate the Zimmer Agreements would be unreasonably duplicative or

10

cumulative of previous testimony [DE 105-1 at 9-10]. However, like the Magistrate Judge recognized, Stryker's counsel prohibited any Stryker employee from testifying in an official capacity on behalf of Stryker [DE 100 at 2-3], thus Zimmer has not obtained any testimony from Stryker on these topics. Moreover, whether Stryker took any steps to ensure its employees and independent contractors of its distributors complied with their restrictive covenant bears on Zimmer's claims that Stryker instituted a nationwide scheme to steal Zimmer's business.

In this case, the Court has not found that the Magistrate Judge made any factual findings that were clearly erroneous. As a district court recently noted, "[t]he balancing of any burden imposed upon Deponent against Plaintiffs' need for information is the type of fact-based discovery determination which is particularly suited for deference to a magistrate judge." *Green v. Cosby*, No. 13-30211-MGM, 2016 WL 554816, at *7 (D. Mass. Feb. 11, 2016).

Topics 4-6 - Attorney-client Privilege Issues

Stryker further objects to the Magistrate Judge's legal findings on Topics 4, 5, and 6 seeking production of a 30(b)(6) witness to provide testimony as to why Stryker believes that the actions Stryker took comply with non-compete restrictions, and whether certain conduct violates the duty of loyalty or breach non-compete or non-solicitation restrictions. Stryker claims these topics seek testimony on Stryker's legal analysis and conclusions with respect to the causes of action in this case and its defenses. The Magistrate Judge applied the correct legal standard and recognized that the law prohibits discovery which inevitably invades the attorney client privilege [DE 100 at 10-11, 14] and he did partially deny the motion to compel, limiting the discovery on these three topics.

The Magistrate Judge agreed with Stryker's position that Zimmer's pursuit of Topic 4 would improperly invade the attorney-client and work product privilege if it was to result in the disclosure of Stryker's legal theories of defense to Zimmer's claims and specifically noted that "Stryker need not reveal its legal theories or how it used the facts of the case to shape its defenses." [DE 100 at 10.] However, in response to Zimmer's contention that it merely seeks to investigate, discover, and understand: (1) what factual actions Stryker undertook (if any) to ensure the sales representatives at issue complied with their obligations to Zimmer; and (2) how, factually, Stryker believes those representatives' respective employment did so, the Magistrate Judge found that Topic 4 was relevant and appropriate, and must be addressed by the deposition witness. The Magistrate Judge did, however, limit the inquiry to: (1) what factual actions Stryker undertook (if any) to ensure the sales representatives at issue complied with their obligations; and (2) how, factually, Stryker believes those representatives' respective employment did so [DE 100 at 11].

The Magistrate Judge also analyzed whether Topics 5 and 6 were properly tailored. The Magistrate Judge found that "[a]ssuming Zimmer limits its inquiry under Topics 5 and 6 to Stovall's and Stryker's conduct and the specific restrictive covenants at issue in this case, testimony as to Stryker's contentions about those facts is discoverable." [DE 100 at 13.] Moreover, the Magistrate Judge specified that it was off limits to "extend[] its inquiry to Stryker's rationale for its contentions" because that would require Stryker's counsel to divulge their mental impressions about the specific evidence and how it supports their legal conclusions about whether Stovall violated his duty of loyalty or restrictive covenants [DE 100 at 14].

The Magistrate Judge summarized his limitation on the scope of Topics 5 and 6 as follows:

> In summary, Zimmer's interest in learning what position Stryker's corporate witnesses intend to take at trial along with Zimmer's commitment to limiting the scope of Topics 5 and 6 to the specific conduct of Stovall and Stryker and the pertinent restrictive covenants as alleged in the amended complaint justify Zimmer's inquiry into Stryker's contentions on the matters described in topics 5 and 6. Zimmer is not entitled, however, to question Stryker's 30(b)(6) witness about Stryker's rationale for those contentions. In addition, Zimmer must use care in crafting all of its deposition questions, as it has promised to do, to avoid invading Stryker's attorney-client and work product privilege.

[DE 100 at 14].

Nevertheless, Stryker believes the Magistrate Judge ultimately misapplied the law by finding that Zimmer could craft its deposition questions for Topics 4, 5, and 6 in a manner that would avoid invading Stryker's attorney-client privilege [DE 105-1 at 11]. Stryker claims it would be impossible to provide any testimony with respect to these topics without forcing Stryker to divulge its counsel's mental impressions about the specific evidence in the case and its legal conclusions.

Stryker cites several cases in support of its argument that the Magistrate Judge improperly found these topics could be explored without infringing upon the attorney-client privilege. Stryker relies heavily upon *Norco Indus., Inc. v. CPI Binani, Inc.*, No. 2:12-cv-313, 2012 WL 6508624 (N.D. Ind. Dec. 13, 2012), but that case is distinguishable. In *Norco*, the Court found:

> Norco's deposition topics exceed the scope of discovery and attempt to discover the legal conclusions and mental impressions of CPI's attorneys. The proposed topics state Norco's intent to inquire about the factual basis of CPI's possible defenses. The *factual basis of any defenses* that may be raised is a determination made by CPI's attorneys. This would amount to an attempt to depose opposing counsel.

13

(*Id.* at *4) (emphasis added).  Here, in contrast, the requested testimony seeks the factual basis of the party's conduct.  *See, e.g., Med. Assur. Co., Inc. v. Weinberger*, No. 4:06-cv-117, 2011 WL 2471898, at *10 (N.D. Ind. June 20, 2011) (holding the party seeking discovery is entitled to "explore the factual basis that may have formed [the other party's] position." ).  *JP Morgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 363 (S.D.N.Y. 2002), is similarly distinguishable, where that case found the party was really requesting "mental impressions, conclusions, opinions, and legal theory," work product that is properly shielded from discovery. In *Gregg v. Local 305 IBEW*, No. 1:08-CV-00160, 2010 WL 556526, at *4 (N.D. Ind. Feb. 9, 2010), Magistrate Judge Cherry ruled that the training committee did not need to respond to a particular interrogatory because, *inter alia*, it sought a legal conclusion.  But in this case, the Magistrate Judge specifically limited the topics to ensure that Zimmer cannot seek legal conclusions from Stryker's Rule 30(b)(6) corporate representative(s) [DE 100 at 14].  *S.E.C. v. Buntrock*, 217 F.R.D. 441, 444-45 (N.D. Ill. 2003), is not on point because the topics in that case required testimony from the SEC attorneys who conducted the investigation.  In this case, the Magistrate Judge correctly concluded that Zimmer is seeking factual information from Stryker's Rule 30(b)(6) corporate representative(s), not its counsel [DE 100 at 12-14].  Finally, *Medical Assurance Company*, 4:06-cv-117, 2011 WL 2471898, at *10 (N.D. Ind. 2011), is different because it prohibited a deposition topic seeking to inquire into an evaluation the defendant conducted of the underlying claims in anticipation of litigation.  Here, Zimmer seeks the position Stryker's corporate witness(es) intend to take at trial, including the factual background surrounding Zimmer's claims.  Nothing about that information could be protected as being created in anticipation of litigation.

14

Ultimately, Zimmer is seeking testimony on the facts underlying this case, thus the topics do not violate the attorney-client privilege, so long as Zimmer tailors its questions as required by the Magistrate Judge. Because the Magistrate Judge specifically limited Topics 4, 5, and 6 to the factual underpinnings of the claims in this case, and specifically prohibited questions where Stryker's counsel would have to divulge their mental impressions about specific evidence and how it may support their legal conclusions, the Court cannot say that the Magistrate Judge misinterpreted or misapplied the applicable law. Consequently, his decision on these topics stands.

In sum, Stryker has failed to establish that there is any part of the Magistrate Judge's decision that should be modified or set aside as clearly erroneous or contrary to law. *See, e.g., Jones v. Elkhart City*, No. 2:10-CV-402-TLS, 2012 WL 2458606, at *2 (N.D. Ind. June 27, 2012) (denying motion to reconsider magistrate judge's order where the plaintiff failed to show it was clearly erroneous or contrary to law). Therefore, the appeal is denied. The Court cautions Zimmer to carefully craft its questions during the 30(b)(6) deposition so not to infringe upon the mental impressions, conclusions, opinions, or legal theories of Stryker's counsel. In compliance with the applicable rules of procedure, if there are certain questions during the deposition that, after conferring together in an effort to resolve the dispute without court action, cannot be resolved, then the parties may bring that matter back to the attention of the Magistrate Judge.

<u>Request for Attorney's Fees and Costs</u>

In its response in opposition to Stryker's appeal of the Magistrate Judge's order, Zimmer requests that the Court award attorney's fees and costs incurred in the motion to compel and this appeal. Federal Rule of Civil Procedure 37(a)(5)(C) provides that if the motion to compel is

"granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). The Court **ORDERS** Stryker to file with the Court on or before June 2, 2016, a verified Statement explaining why the Court should not award Zimmer its reasonable expenses (including attorneys' fees and costs) in bringing the motion to compel and defending Stryker's appeal of the Magistrate Judge's Order under Rule 37(a)(5)(C). Any response by Zimmer shall be filed on or before June 16, 2016.

## Conclusion

For the reasons set forth above, Stryker's appeal of the Magistrate Judge's order [DE 105] is **DENIED**. Additionally, the Court **ORDERS** Stryker to file with the Court on or before **June 2, 2016**, a verified Statement explaining why the Court should not award Zimmer its reasonable expenses in bringing the motion to compel and defending Stryker's appeal of the Magistrate Judge's Order under Rule 37(a)(5)(C). Any response by Zimmer shall be filed on or before **June 16, 2016.**

SO ORDERED.

ENTERED: May 18, 2016

/s/ JON E. DEGUILIO<br>
Judge<br>
United States District Court