UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ZIMMER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-CV-152 JD |
| | ) | |
| HOWMEDICA OSTEONICS CORP., | ) | |
| d/b/a/ Stryker Orthopedics, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

In this order, the Court addresses a number of issues raised in the parties' pretrial filings. The Court begins with the parties' motions in limine [DE 165, 176], and then addresses disputes over the scope of the summary judgment order and the standard and burden for sealing materials offered at trial.

## A.    Defendants' motions in limine

### 1.    Conspiracy among defendants

The defendants move to bar any evidence or argument of a conspiracy among the defendants. They first argue that the evidence is insufficient to establish a conspiracy, either between Stryker and Mr. Stovall or between Stryker and CrossLink, so Zimmer should be barred from pursuing those arguments at trial. That argument is misplaced in the context of a motion in limine. Conspiracy is one of Zimmer's theories for holding the defendants liable for the claims asserted in this case. If the defendants believe the evidence is insufficient to support such a theory, that could have been raised through a motion for summary judgment, or could be raised through a motion for judgment as a matter of law at trial. A motion in limine is not a proper

vehicle for deciding whether the evidence is sufficient to support a plaintiff's claim, so the Court will not entertain this argument at this stage.

The defendants also argue that a conspiracy between Stryker and Mr. Stovall cannot exist as a matter of law because an employee cannot conspire with his employer. *See Soft Water Utils. Inc. v. LeFevre*, 308 N.E.2d 395, 399 (Ind. 1974) ("A corporation cannot conspire with an agent when that agent is acting within the scope of his authority. A corporation acts through its agents and the acts of the agent are the acts of the corporation."). This argument overlooks, however, Zimmer's claim that Mr. Stovall violated his fiduciary duty while still employed with Zimmer and that he conspired with Stryker to do so. Because Mr. Stovall was not an employee of Stryker at that time, the principle that an employee cannot conspire with his employer does not foreclose the possibility of a conspiracy between Mr. Stovall and Stryker. Therefore, the Court denies this motion.

### 2. Term "Trojan horse"

The defendants seek to bar Zimmer from using the term "Trojan horse," under Rule 403. They argue that this term would be prejudicial and inflammatory because it would "undoubtedly conjure up highly misleading and emotionally-charged images of warfare." The Court does not see how. The jury will not be led to believe that Stryker was waging a literal war against Zimmer, and Zimmer's use of this commonplace term as a metaphor to describe Stryker's actions carries no risk of unfair prejudice. This motion is denied.

### 3. Stovall's fishing trip

The defendants seek to bar any reference to a fishing trip that Mr. Stovall went on with Dr. Risko and other Stryker employees, arguing that the evidence is irrelevant and prejudicial. The Court disagrees. The evidence is relevant to Mr. Stovall and Stryker's relationship and contacts with Dr. Risko during the relevant time period, and this evidence carries no risk of

prejudice. The defendants are free to argue to the jury that it should not draw the inferences that Zimmer wishes to draw from this evidence, but that does not warrant exclusion. This motion is denied.

### 4. Stovall's hiring as part of Vitagel scheme

The defendants seek to bar any testimony or argument that Stovall's hiring was part of the alleged "Vitagel scheme," contending that the evidence is insufficient to support such an argument. However, whether Mr. Stovall was in fact hired as part of a Vitagel scheme is a main point of contention at trial, and Zimmer is entitled to try to establish through the evidence at trial that he was. The Court also rejected this same argument at summary judgment. Thus, this motion is denied.

### 5. Economic loss doctrine

The defendants next move to bar Zimmer's tort claims against Mr. Stovall in their entirety, arguing that the economic loss rule confines any claim against Mr. Stovall to a breach of contract claim and precludes any recovery through a tort claim. In other words, the defendants ask the Court to enter judgment against Zimmer on its tort claims against Mr. Stovall. As explained above, that is the function of a motion for summary judgment or a motion for judgment as a matter of law—not a motion in limine.

In addition, the defendants have not shown that the tort claims against Mr. Stovall should be precluded on this basis, for a number of reasons. The economic loss rule is typically described as meaning that a "defendant is not liable under a tort theory for any purely economic loss *caused by its negligence*." *Indianapolis-Marion Cty. Public Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722 (Ind. 2010) (emphasis added); *see also JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 785 (7th Cir. 2015) ("Under Indiana's economic loss doctrine, . . . there is no liability in tort for pure economic loss caused unintentionally." (internal quotation omitted)).

3

Here, Zimmer only asserts claims for intentional torts, not negligence, so that formulation of the economic loss rule is inapplicable here. In addition, Indiana has recognized that the economic loss rule generally does not apply to claims for a breach of fiduciary duty, so this doctrine would not affect Zimmer's breach of fiduciary duty claim. *Corry v. Jahn*, 972 N.E.2d 907, 917 n.9 (Ind. Ct. App. 2012).

The defendants also invoke the related principle that a party cannot repackage a breach of contract claim as a tort claim in an effort to seek punitive damages. *Greg Allen Const. Co., Inc. v. Estelle*, 798 N.E.2d 171, 173 (Ind. 2003); *Bayview Loan Servicing, LLC v. Golden Foods, Inc.*, 59 N.E.3d 1056, 1068 (Ind. Ct. App. 2016) ("[A] party may not restyle a breach-of-contract claim as a tort simply to obtain additional damages."); *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364–65 (Ind. Ct. App. 2012) ("Where the source of a party's duty to another arises from a contract, tort law should not interfere."). The defendants argue that Zimmer's claims against Mr. Stovall should be limited to a breach of his restrictive covenant, and that it cannot pursue separate tort claims. Their argument fails to acknowledge, however, that they also dispute the validity of the contract, and they did not cite any authority in which even an invalid contract triggered the economic loss doctrine. Accordingly, the defendants have not shown that the economic loss doctrine bars any of Zimmer's claims as a matter of law at this point, so the Court denies this motion in limine.

### 6.    Claim for tortious interference with contract

Stryker seeks to bar Zimmer's claim against it for tortious interference with contract as to CrossLink, arguing that the evidence is insufficient to support that claim. However, these arguments are indistinguishable from the arguments it made in support of its motion for summary judgment on this same claim. Not only is a motion in limine not a vehicle for testing the sufficiency of the evidence, but these arguments have already been squarely rejected. If

4

Stryker believes that the evidence introduced at trial is insufficient to support this claim, it may make an appropriate motion at trial, but these arguments are wholly unfounded and misplaced as a motion in limine.

### 7.  Restrictive covenants being unenforceable

The defendants next seek to bar Zimmer's tortious interference with contract claim against Stryker and its breach of contract claim against Mr. Stovall on the basis that the restrictive covenants underlying those claims are unenforceable. As noted below, Zimmer seeks the opposite relief, asking the Court to hold that the restrictive covenants are in fact enforceable. The Court cannot grant either request.

In Indiana, to be enforceable, a "restrictive covenant must be reasonable with respect to the legitimate interests of the employer, restrictions on the employee, and the public interest." *MacGill v. Reid*, 850 N.E.2d 926, 929 (Ind. Ct. App. 2006); *Cent. Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 728–29 (Ind. 2008). The employer bears the burden "of establishing that the agreement is reasonable in scope as to the time, activity, and geographic area restricted," such that it restricts an employee only so far as necessary to protect the employer's legitimate interests. *Krueger*, 882 N.E.2d at 729; *see also MacGill*, 850 N.E.2d at 930.

Here, the focus of the dispute is whether the geographic scope of the agreements was reasonable. Both sides cite cases that have resolved that issue in their respective favors in evaluating agreements that were the same as or similar to the ones at issue here. *E.g.*, *Zimmer, Inc. v. Masters*, No. 3:14-cv-312-RLM, 2014 WL 1317090 (N.D. Ind. Mar. 31, 2014); *Zimmer US, Inc. v. Keefer*, No. 3:12-cv-395-JD, 2012 WL 5268550 (N.D. Ind. Oct. 23, 2012). However, neither of those cases suggest that the geographic scope of the term at issue was *per se* reasonable or unreasonable; rather, those cases illustrate that the reasonableness of a restrictive covenant generally depends on the facts of a particular case. In *Masters*, the covenant was

unreasonable because it defined the geographic scope by reference to the geographic territory assigned to the employee, yet the employee had not actually been assigned to any particular geographic territory or to any accounts at all. 2014 WL 1317090, at *5–6. In contrast, the same term was found reasonable in *Keefer* because the facts suggested that the employee had been assigned particular accounts that comprised a geographic territory. 2012 WL 5268550, at *9–10.

Given the fact-specific nature of this inquiry, a motion in limine is not a proper vehicle for resolving whether the covenants at issue here are enforceable, so the defendants' motion is denied. That is not to say, though, that this is a question for the jury. "The reasonableness of a covenant not to compete is a question of law . . . ." *Masters*, 2014 WL 1317090, at *8; *Krueger*, 882 N.E.2d at 729 ("Unlike reasonableness in many other contexts, the reasonableness of a noncompetition agreement is a question of law."); *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 280 (Ind. 1983). Thus, whether or not the restrictive covenants here are enforceable will be a question for the Court to decide, not an issue to be argued to the jury. Accordingly, the Court will address with the parties at the final pretrial conference how and when the Court will make that determination.

### 8.   Chris Smith and William Whilden

The defendants seek to bar any evidence about Chris Smith and William Whilden. Those individuals both worked for a Zimmer distributer and then were allegedly hired by Stryker to sell Vitagel in their old Zimmer territories. The defendants first argue that those individuals are irrelevant to this action because there is no evidence that Zimmer suffered damages as a result of those individuals' sale of Vitagel for Stryker. However, Zimmer is not seeking any damages based on those individuals' activities. Rather, it argues that Stryker's conduct as to those individuals is evidence of the existence of the same scheme pursuant to which it hired Mr. Stovall and the Dickerson team. In particular, it notes that Stryker hired both of those individuals

to sell Vitagel in their former Zimmer territories, yet neither of those individuals actually made any Vitagel sales. Zimmer argues that those facts make it more likely that Stryker's hiring of Mr. Stovall and the Dickerson team to sell Vitagel was merely a ruse, and that Stryker did not actually believe they would be making Vitagel sales. That, in turn, would make it more likely that Stryker actually hired them to sell orthopedic implants to their former clients. Because the relevance of that evidence does not depend on a claim for damages based on Mr. Smith or Mr. Whilden, the Court does not find that a lack of evidence of such damages makes this evidence inadmissible. The defendants also argue that this evidence is irrelevant because the statute of limitations has run on any claim based on Mr. Smith's conduct. However, the statute of limitations bars claims, not evidence; even if Zimmer could not assert a claim based on Mr. Smith's conduct, that does not make evidence of that conduct inadmissible to prove the existence of a scheme from which Zimmer suffered a later injury.

The defendants also argue that evidence as to Mr. Smith and Mr. Whilden is irrelevant because there is no evidence that either of them breached their restrictive covenants. However, the relevance of this evidence does not depend on whether those individuals breached their agreements. As just discussed, if those individuals were hired to sell Vitagel yet made no sales, that would make it more likely that Stryker's hiring (at substantial expense) of Mr. Stovall and the Dickerson team to sell Vitagel was a pretense. Finally, the defendants argue that this evidence should be excluded under Rule 403. As the Court has previously discussed, though, the "Vitagel scheme" is a central theory of Zimmer's case, so the relevance of this evidence in support of that theory is not substantially outweighed by any danger of unfair prejudice or confusing the issues. Accordingly, this motion is denied.

### 9. Claim for tortious interference with contract barred by laches and waiver

Stryker seeks to bar Zimmer's claim for tortious interference with contract as to CrossLink because such a claim is barred by laches or waiver. Again, this motion, which seeks to bar a claim in its entirety, is an untimely and misplaced motion for summary judgment, and the Court will not entertain it as a motion in limine.

### 10. Damages post-dating the one-year terms of the non-compete agreements

Stryker moves to exclude any evidence of damages subsequent to the one-year terms of the non-compete agreements. The arguments as to this motion largely parallel those in Stryker's motion to exclude the opinion of Zimmer's damages expert, which has now been addressed. In addition, Zimmer's damages theory is the subject of separate briefing that is ongoing. [DE 218]. Accordingly, the Court denies this motion in limine, and will address this issue, to the extent it remains in play, in connection with the separate briefing on Zimmer's damages.

### 11. Dean Lantermann's testimony

The defendants move to bar any testimony from Dean Lantermann, or in the alternative, to bar him from offering any opinions about withheld or deleted text messages. Mr. Lantermann is a computer expert whom the Court ordered to conduct a forensic examination of Mr. Stovall's electronic devices in order to recover messages that may have been deleted from those devices. In particular, the Court ordered Mr. Lantermann to examine those devices, prepare a report with certain information about the messages he was able to recover, and deliver the messages themselves to Mr. Stovall's counsel, who would then review the messages and produce responsive messages to Zimmer.

The defendants object to any testimony from Mr. Lantermann on the basis that he did not prepare an expert report and has not disclosed any opinions in this case. Thus, they argue that it would be improper for Mr. Lantermann to testify at trial. Zimmer's response indicates that it

does not intend to seek opinion testimony from Mr. Lantermann, though. It represents that it intends to call Mr. Lantermann to offer purely factual testimony about the spreadsheets he created with the messages he recovered from the devices, and to explain how he extracted that information from the devices.

If the testimony is limited in that manner, the Court sees no basis on which to exclude it. Even if, as the defendants note, Mr. Lantermann did not prepare a formal expert report or the report contemplated in the Court's order, they concede that Mr. Lantermann did provide them with complete spreadsheets containing the messages and metadata. They offer no reason why he should not be permitted to authenticate and explain the content of those spreadsheets.[1] In addition, Zimmer expressly advised the defendants during discovery that it intended to offer Mr. Lantermann's testimony on these subjects. [DE 199-2]. Not only did that disclosure adequately notify the defendants of the content of this testimony, the defendants could have sought a formal report at that time if they believed one was required. Accordingly, given the limited scope of this testimony, the Court denies this motion.

### 12.    Affidavits of Victor, Brittain, and Smith

The defendants seek to bar affidavits by three individuals from being admitted into evidence. Zimmer represents that those affidavits were only included in the defendants' own exhibit list—not Zimmer's—so the defendants are apparently moving to exclude their own evidence. Zimmer does not object, so the motion is granted.

---

[1] The Court acknowledges that the defendants have separately objected to the admission of those spreadsheets. The Court will address those objections separately.

### 13. Claim for punitive damages

The defendants move to bar Zimmer's claim for punitive damages, arguing that such a claim will be unsupported by the evidence. Yet again, that is a motion for summary judgment, not a motion in limine, so the motion is denied.

### 14. Separation of witnesses

The motion for separation of witnesses is granted as unopposed. Fed. R. Evid. 615.

### 15. Documents not disclosed during discovery

The defendants seek to exclude any documents not disclosed during discovery. This motion is denied, as they do not identify any specific documents to which this motion applies, or even suggest that there are such documents. To the extent any such documents arise, the parties will need to identify them specifically and support their arguments based on the circumstances particular to those documents; a generic motion in limine is an inappropriate means of addressing this issue.

### 16. Other Stryker litigation

Stryker seeks to bar evidence of other litigation involving the defendants or to which they are parties. In response, Zimmer agrees that this evidence is generally irrelevant and should be excluded for that reason, but it asks to be able to seek relief from an order barring this evidence should the door be opened or should this evidence otherwise become relevant. Accordingly, the Court grants this motion. As with any orders in limine, if circumstances change at trial, Zimmer may raise the issue with the Court outside the presence of the jury to seek permission to use this evidence.

### 17. Stryker's size, wealth, or resources

Stryker moves to exclude evidence of its size, wealth, or resources, arguing that such evidence would be irrelevant and prejudicial. However, Zimmer is seeking punitive damages,

and a defendant's financial position can be relevant in determining an amount of punitive damages. *See Leister v. Dovetail, Inc.*, 546 F.3d 875, 883 (7th Cir. 2008); *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 485 (7th Cir. 2003) (noting that a defendant's annual revenues is relevant to an award of punitive damages). Stryker's motion does not acknowledge the availability of punitive damages or attempt to argue why this evidence would not be relevant for that purpose, so this motion is denied.

### 18. Order on summary judgment

The defendants finally seek to exclude the content of the Court's order on the motion for summary judgment. This motion is granted, as it would be inappropriate to disclose those matters to the jury. This order would not, of course, limit any arguments that counsel make to the Court, outside the jury's hearing, as to which that order may be relevant.

### B. Zimmer's motions in limine

### 1. Affirmative defenses not pled

Zimmer first moves to bar the defendants from pursuing affirmative defenses that they failed to plead in their answer. In particular, the defendants' filings suggest that they intend to pursue the defenses of waiver and of failure to mitigate damages, but they did not include those affirmative defenses in their answer, so Zimmer argues they are waived. *United States v. Adent*, 821 F.3d 911, 914 (7th Cir. 2016) ("It has long been recognized that a defendant's failure to plead . . . . an affirmative defense in his or her answer to the complaint constitutes a waiver of that defense."); *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997) ("Federal Rule of Civil Procedure 8(c) requires a defendant to plead a statute of limitations defense and any other affirmative defense in his answer to the complaint. The purpose of that rule, as courts have long recognized, is to avoid surprise and undue prejudice to the plaintiff by providing her notice and the opportunity to demonstrate why the defense should not prevail."). The defendants concede

that they did not plead those defenses, but they argue that they should be able to pursue them anyway because (1) Zimmer had adequate notice through other documents that the defendants intended to pursue these defenses, and (2) Zimmer suffered no prejudice through these omissions and the defendants would be prejudiced if barred from presenting these defenses.

To begin with, the Court does not find that the materials the defendants cite would have notified Zimmer that they intended to pursue these defenses, as might excuse their failure to plead them. *See Venters*, 123 F.3d at 968 (noting that courts "are not inclined to find a technical failure to comply with Rule 8(c) fatal . . . so long as the record confirms that the plaintiff had adequate notice of the defense and was not deprived of the opportunity to respond"). First, as to the defense of waiver, the defendants argue that Zimmer was on notice of this defense based on statements in their motion for summary judgment that Zimmer had never sued CrossLink or CrossLink's employees, which the defendants now argue gives rise to waiver. Those facts would not have put Zimmer on notice of a waiver defense, however, for the simple reason that they are irrelevant to a waiver defense.[2] "Waiver is the intentional relinquishment of a known right . . . ." *2444 Acquisitions, LLC v. Fish*, 84 N.E.3d 1211 (Ind. Ct. App. 2017). "'Because waiver is an affirmative act, a party's mere silence, acquiescence or inactivity does not constitute waiver unless the party has a duty to speak or act.'" *Id.* (quoting *Pohle v. Cheatham*, 724 N.E.2d 655, 659 (Ind. Ct. App. 2000)). Here, the only facts the defendants point to as indicative of their waiver defense are that Zimmer did not sue other parties. But inactivity does not constitute

---

[2] In addition, raising a defense for the first time at summary judgment could still prejudice a plaintiff by preventing it from addressing that defense during discovery.

waiver. *Id.* Having not identified any affirmative act by Zimmer that would constitute a waiver, the defendants did not put Zimmer on notice that they intended to pursue such a defense.[3]

The defendants also argue that Zimmer should have known they intended to assert the defense of failure to mitigate damages, notwithstanding their failure to plead it. They first cite to affidavits attached to Mr. Stovall's answer in which certain doctors stated that Zimmer had not contacted them to seek their continued business after Mr. Stovall's departure. However, the answer cited those affidavits in support of its affirmative defense of unclean hands. In addition, the facts in those affidavits could equally support an argument that Zimmer's loss of business with those doctors was caused by factors other than Mr. Stovall's breach of his agreement—a separate inquiry from whether Zimmer adequately mitigated its damages after suffering an injury as a result of Mr. Stovall's breach. Thus, those affidavits would not have fairly notified Zimmer that the defendants intended to pursue an affirmative defense of failure to mitigate damages. The defendants also cite to certain discovery they propounded in which they asked Zimmer about the efforts it had taken to mitigate its damages. There is a difference, though, between inquiring into whether a basis for a defense exists such that a defendant could amend their pleading to assert it, and notifying the plaintiff that they were in fact asserting that defense. The defendants did not move—and still have not moved—to amend their answers after receiving the discovery responses, so Zimmer had no reason to believe the defendants were actually asserting this affirmative defense. Thus, the Court does not find that the defendants adequately notified Zimmer of their intent to raise these defenses.

---

[3] Indeed, if these are the only facts upon which the defendants base their waiver defense, then it is meritless in the first place.

That leaves the question of whether Zimmer was prejudiced by that omission. *See Venters*, 123 F.3d at 968; *Best v. City of Portland*, 554 F.3d 698, 700 (7th Cir. 2009) (noting that "'a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result'" (quoting *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005))). However, the parties' briefs contain little discussion on this point. Accordingly, the Court will take this motion under advisement. The parties should be prepared to discuss at the final pretrial conference whether Zimmer was prejudiced by the late assertion of these affirmative defenses such that the defenses should be deemed waived.

### 2.    Equitable affirmative defenses

Zimmer next moves to preclude the defendants from presenting equitable affirmative defenses—including unclean hands, laches, and equitable estoppel—to the jury at trial. It first argues that equitable defenses are matters for the Court to decide, not for the jury, so evidence limited to these defenses would be irrelevant and prejudicial if presented to the jury. It also argues that the defenses fail regardless, because they are unsupported by the evidence and also because they are not available as defenses to claims at law, meaning they are inapplicable now that Zimmer is no longer seeking equitable relief.

Stryker's response focuses on arguing that equitable defenses can be asserted even as to claims at law, regardless of whether Zimmer still seeks equitable relief. However, assuming that the equitable defenses are indeed available, those defenses would be decided by the Court, not presented to or decided by a jury. Stryker concedes that the defenses at issue are equitable defenses. And under federal law, which controls on this question,[4] there is no right to a jury trial

---

[4] The result would be the same under Indiana law: "when both equitable and legal causes of action or defenses are joined in a single case, the equitable causes of action or defenses are to be tried by the court while the legal causes of action or defenses are to be tried by a jury." *Songer v. Civitas Bank*, 771 N.E.2d 61, 64 (Ind. 2002).

on equitable issues. *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 735 (7th Cir. 2004). As the Seventh Circuit has explained, "[e]ven when a plaintiff is entitled to a jury trial on his legal claims, the district court must nonetheless make an independent judgment as to any equitable issue." *Id.*; *see also Maksym v. Loesch*, 937 F.2d 1237, 1248 (7th Cir. 1991) (noting that equitable defenses are usually available against claims at law, but that the distinction between legal and equitable defenses may affect the right to a jury trial on those issues); *cf.* Seventh Circuit Pattern Civil Jury Instructions § 12.7.3 ("The Committee has not included an instruction defining the defenses of unclean hands and estoppel because they are issues for the court, not the jury.").

Accordingly, this motion is granted, to the extent that these equitable defenses may not be argued to the jury, meaning also that any evidence relevant solely to these defenses will not be presented to the jury. The Court will discuss with the parties at the final pretrial conference the manner in which any evidence relevant only to these defenses will be presented to the Court for its consideration. The Court does not address at this time the parties' arguments as to the substance of these defenses.

### 3. Zimmer's non-enforcement of other agreements

Zimmer moves to exclude evidence of Zimmer's past enforcement or non-enforcement of restrictive covenants other than Mr. Stovall's. In particular, Zimmer seeks to exclude evidence that it did not seek to enforce restrictive covenants against the Dickerson team, Mr. Whilden, or Mr. Smith. Zimmer argues that this evidence would be irrelevant, as the only breach of contract claim it asserts in this action is against Mr. Stovall, so detouring into whether and why it also brought actions against other employees would be misleading and wasteful.

The Court finds that this evidence could be relevant at least in part as to damages. In particular, Zimmer claims that Stryker induced the Dickerson team to breach their restrictive

covenants with Zimmer and that their breaches of those agreements caused it substantial damage. If Stryker can show that Zimmer was aware of those employees' conduct at the time, then Zimmer's failure to timely seek injunctive relief to enforce those agreements could undermine an argument that Zimmer was in fact suffering substantial damages due to those employees' ongoing competition against it. Accordingly, this motion is denied.

The Court notes, however, that the focus of this trial will be on the claims Zimmer *is* bringing and the damages it *is* seeking. To the extent the defendants begin detouring into litigating the merits of claims not before the jury, or appealing to sympathy based on Zimmer's decision to seek damages from some parties but not others, the Court will sustain an appropriate objection at trial.

### 4.      Legal conclusions as to the relationship between Stryker and CrossLink

Zimmer moves to bar the defendants from eliciting legal conclusions from their witnesses as to the relationship between Stryker and CrossLink or as to whether Stryker is liable for CrossLink's conduct. The only potential testimony Zimmer identifies on that subject is from the defendants' damages expert, who opined that Zimmer's expert should not have included damages from CrossLink's hiring of the Dickerson team in his calculation because those parties' conduct was not attributable to Stryker. First, it would be improper for the expert to opine as to whether Stryker is in fact liable for that conduct or whether the evidence supports such a finding, as that sort of conclusion would be outside the scope of his expertise and outside the function of an expert witness. However, it is not clear whether that testimony is still at issue in light of the exclusion of Zimmer's damages expert's testimony. And beyond that potential testimony, whether certain testimony in fact constitutes a legal conclusion is best evaluated in light of the specific testimony. Since the motion does not further identify any specific testimony, and since the defendants indicate that they do not intend to elicit legal conclusions from their witnesses, the

Court denies this motion in limine, but will consider upon an appropriate objection at trial as to whether certain testimony would constitute an inappropriate legal conclusion.

**5.       Zimmer's recruiting and hiring practices**

Zimmer next moves to exclude evidence about its recruiting and hiring practices unrelated to the facts at issue in this action. In response, the defendants indicate that they wish to show that it is commonplace in the industry for companies to hire their competitors' employees, and that the companies often review those employees' non-compete agreements as part of that process. If offered at that level of generality, the Court agrees that this sort of evidence could be relevant for providing some context for these claims and would not carry a risk of prejudice, as Zimmer does not contend that Stryker's conduct was wrongful in those respects. Thus, the Court denies this motion to the extent that the defendants may inquire in general as to whether Zimmer and other competitors sometimes hire other companies' employees and review those employees' non-compete agreements. However, the Court grants this motion to the extent that the defendants may not inquire as to particular instances of Zimmer's recruiting or hiring or its particular practices. As Zimmer argues, the trial in this case is on the claims against Stryker, so its focus will be on Stryker's conduct, not Zimmer's. Inquiring into specific instances of Zimmer's recruiting or hiring practices would be a distraction and would have little, if any, relevance, so the Court grants the motion in that respect.

**6.       Zimmer's size, assets, or net worth**

Zimmer seeks to exclude evidence of its size, assets, or net worth. The defendants state that they have no objection to this motion, so long as their motion to exclude Stryker's size, wealth, or resources is also granted. As discussed above, the defendant's motion is being denied. However, besides asking that their own motion be granted as well, the defendants did not make or develop any argument in opposition to Zimmer's motion. The two motions are not equivalent,

either; Stryker's size, wealth, and resources are relevant to Zimmer's pursuit of punitive damages, but Stryker has not identified any comparable purpose for which it could use evidence of Zimmer's size, assets, or net worth. Thus, this motion is granted.

### 7. Contracts being unenforceable or business relationships being invalid

Zimmer moves to preclude argument that the contracts at issue are unenforceable or that the business relationships at issue are invalid. As discussed above, whether the contracts at issue are enforceable is a question for the Court to decide. Thus, this motion is granted, to the extent that the enforceability of the restrictive covenants will not be presented to the jury.

As to the validity of the business relationships, a valid business relationship is an element of a claim for tortious interference with business relationships. Zimmer argues that there is no evidence that the relationships at issue—its relationships with Dr. North and Dr. Risko in the Amarillo territory—were invalid, but that is an issue on which Zimmer bears the burden of proof. The defendants are entitled to hold Zimmer to that burden and to offer evidence, if there is any, to the contrary. Zimmer also notes that the defendants did not challenge this element at summary judgment, but a party need not move for summary judgment on an issue to preserve its ability to contest that issue at trial. Accordingly, the Court sees no basis upon which to bar the defendants from arguing that business relationship at issue are invalid, so this motion is denied in that respect.

### 8. Separation of witnesses

The motion for separation of witnesses was granted above. Stryker had requested an exception to this order to allow its expert witness to observe the testimony of Zimmer's damages expert, so that he could offer rebuttal testimony. However, that request is moot now that the testimony of Zimmer's damages expert has been stricken.

### 9. Other Zimmer litigation

Zimmer moves to bar reference to other litigation involving Zimmer or to which Zimmer is a party. The defendants do not object, so this motion is granted.

### 10. Plaintiff's counsel as witnesses

Zimmer next moves to prevent its attorneys—including its trial counsel and its in-house counsel—from being called as witnesses. The defendants respond that they have no plans at this time to call Zimmer's attorneys as witnesses, but that they may need to do so to authenticate documents in support of their equitable defenses to a claim for damages as to Mr. Smith. However, Zimmer has expressly disclaimed any damages from Mr. Smith's conduct, so the evidence would not be relevant for that purpose. In addition, at least as to trial counsel, calling the opposing trial counsel as a witness would require exceptional justification. Accordingly, this motion is granted. If circumstances arise such that the defendants believe they need to call Zimmer's attorneys as witnesses, they must timely raise the issue with the Court.

### 11. Lack of pursuit of certain damages meaning lack of causation for pursued damages

Zimmer moves to bar the defendants from arguing that the fact that Zimmer is not pursuing damages for other surgeons and territories constitutes evidence of a lack of causation for the damages it does seek in this case. In particular, Zimmer is seeking damages as to Dr. North and Dr. Risko in Amarillo, and Dr. Jennings and Dr. Ridgeway in South Carolina. It seeks to bar the defendants from arguing that, because Zimmer is not seeking damages as to other doctors or other territories, it did not sustain damages as to the doctors just noted. The defendants' response largely characterizes this motion as seeking to bar any argument against causation of damages. That argument is unresponsive, as this motion does not do so; it seeks

only to bar the defendants from invoking Zimmer's non-pursuit of other damages as a basis for arguing against the damages Zimmer does seek.

The Court finds that the argument subject to this motion would be improper. The question is whether the damages Zimmer is seeking in this action were caused by conduct for which the defendants are liable—the focus should be on the causation of those particular damages. The fact that Zimmer is not seeking damages for other potentially culpable conduct has little, if any, relevance to that question. In addition, allowing such an argument would invite a trial within a trial as to why Zimmer is not seeking those other damages, whether it did sustain other damages, and whether those other damages were in fact caused by the type of misconduct at issue in this case. That would invite confusion, delay, and wasting time, and that danger substantially outweighs any probative value of this argument. The defendants also note that they intend to dispute whether the alleged "Vitagel scheme" existed, but they do not identify how that has anything to do with this motion. Therefore, the Court grants this motion: the defendants may not argue that, because Zimmer is not pursuing damages for other surgeons and territories, the damages it is pursuing in this case were not caused by the defendants' conduct.[5]

### 12. Decision not to file suit as evidence of lack of liability

Finally, Zimmer moves to preclude the defendants from arguing that Zimmer's decision not to file suit against CrossLink, the Dickerson team, Mr. Whilden, or Mr. Smith, is evidence of a lack of liability as to Stryker. Zimmer argues that its decision not to sue those other parties is not probative of whether Stryker is accountable for those parties' conduct, and that inquiring into

---

[5] Again, to the extent the defendants believe that Zimmer opens the door and makes this evidence relevant at trial, they will need to seek permission from the Court before offering evidence or argument on this topic.

the reasons it chose to sue these defendants and not other parties would be wasteful and prejudicial. The Court agrees.

First, Zimmer's decision not to sue CrossLink or the other individuals directly does not mean that those other parties did not engage in conduct for which they or Stryker could be liable to Zimmer. And whether Stryker is liable for those parties' conduct has nothing to do with whether those parties are also defendants in this case. Stryker argues that Zimmer's decision not to sue CrossLink, the Dickerson term, or Mr. Smith is evidence that Zimmer knew that those individuals were not breaching their restrictive covenants. However, Zimmer's knowledge is not an element of any of its claims. What Zimmer knew or whether it believed at the time that its former representatives were breaching their restrictive covenants is beside the point when it comes to liability. The question of what those individuals did will be determined at trial based on evidence of what those individuals actually did, not what Zimmer thought they did or who it sued.

The Court therefore grants this motion. The Court notes, however, that this is a narrow order. As noted above, the defendants can still potentially cite to Zimmer's decision not to seek injunctive relief against the Dickerson team in contesting the amount of *damages* from those individuals' conduct. In addition, whether Stryker is accountable for any conduct by CrossLink or the Dickerson team is a central question at trial. Thus, it is perfectly appropriate for Stryker to argue that it is not accountable for those parties' conduct—in other words, that Zimmer sued the wrong party for those damages. But Stryker's accountability for those parties' conduct would remain the same regardless of whether Zimmer also sued those other parties. Thus, the defendants may not argue that Zimmer's failure to sue those other parties is evidence of a lack of Stryker's liability.

### C. Scope of summary judgment

Though not raised in a motion in limine, the parties' trial briefs reflect a dispute over the scope of the Court's order on the motion for summary judgment. The defendants contend that the Court granted summary judgment as to the unfair competition claim against Stryker in its entirety, and that the Court further limited that claim as to Mr. Stovall to his misuse of trade secrets or confidential information. Zimmer disagrees. The Court does too. In addressing the unfair competition claim at summary judgment, the only aspect of the claim that the Court precluded was a claim against Stryker arising out of the Dickerson team's conduct. [DE 131 p. 10–11 (granting summary judgment on the "unfair competition claim, to the extent it is predicated on the actions of the Dickerson team")]. The Court did not grant summary judgment on this claim against Stryker arising out of Mr. Stovall's conduct; to the contrary, it expressly stated that that aspect of the claim remained live. *Id.* p. 18 (stating that the unfair competition claim is "limited to allegations regarding Stryker's hiring of Stovall"). As to the defendants' argument that the Court also limited the scope of this claim to a misuse of trade secrets or confidential information, the order on summary judgment offers no basis for such an argument. Though, as just noted, the order limited the claim to Stryker's hiring of Mr. Stovall—as distinct from the Dickerson team—it did not further limit the claim to a particular theory within that course of conduct. Thus, the Court rejects the defendants' arguments that the unfair competition only survives as to Mr. Stovall based on a theory of misusing trade secrets of confidential information.

### D. Sealing exhibits and testimony

Another dispute reflected in the parties' filings is the scope of materials that may be filed under seal, and whether the burden will lay on the party seeking or opposing the filing of documents under seal. Zimmer indicates that it has agreed to withdraw its confidentiality

designations as to all of the documents it produced in this matter, and as to the depositions of certain witnesses, so none of those materials need to be filed under seal. Zimmer contends that Stryker should likewise withdraw its confidentiality designations and argues that, to the extent Stryker wishes to maintain any exhibits or testimony under seal, it should be required to demonstrate on a document-by-document or line-by-line basis why the matter should be withheld from the public record.

Stryker disagrees. It cites to the protective order, which allows either party to designate materials that it produces as confidential. The protective order further provides that if a party wishes to dispute a confidentiality designation, that party bears the burden of moving to de-designate the material. Stryker argues that this framework applies equally at trial, such that it is entitled to submit under seal any exhibits or testimony that it has designated as confidential, and that Zimmer bears the burden of establishing why any of those materials should be made public.

Stryker's reliance on the protective order is unfounded. Protective orders govern the exchange of documents between the parties during discovery. Because there is no presumption of public access to such documents, protective orders are often liberal in allowing the parties to limit the disclosure of those documents so as to facilitate the free exchange of documents in discovery. However, an entirely different set of rules applies to testimony and exhibits offered at trial.[6] As the Seventh Circuit has explained, "[s]ecrecy is fine at the discovery stage, before the material enters the judicial record. But those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the

---

[6] In addition, the protective order says nothing about whether confidential documents filed with the Court will be kept under seal; it simply requires the filing party to file a motion to seal, which allows the party seeking secrecy to be heard as to why the material should remain under seal. The burden still remains on the party seeking secrecy to justify sealing the material. Naked reliance on a party's own confidentiality designation does not suffice.

definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002) (internal citation omitted); *City of Greenville, Ill. v. Syngenta Crop Protection, LLC*, 764 F.3d 695, 697 (7th Cir. 2014) ("Discovery material can be shielded from the public eye. Once filed with the court, however, documents that affect the disposition of federal litigation are presumptively open to public view unless a statute, rule, or privilege justifies confidentiality." (internal quotations and citations omitted)). Exhibits and testimony offered at trial are certainly materials that form the basis of the parties' dispute and the resolution of their claims, and are subject to that presumption. In addition, the burden of justifying sealing lies on the party seeking confidentiality. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, No. 17-1674, 2018 WL 652867, at *12 (7th Cir. Feb. 1, 2018) ("Because there is a strong presumption toward public disclosure of court files and documents, courts resolving such motions have placed the burden on the party seeking confidentiality to show good cause for keeping the documents from public view.").

Accordingly, if any party wishes to maintain any evidence offered at trial under seal, it will bear the burden of establishing why that particular evidence should be withheld from public view. To facilitate trial, however, the Court will permit the parties to provisionally file materials under seal when offering the materials at trial, and will require the parties to file, within two weeks of the completion of trial, a motion justifying as to each individual item why it should not be unsealed. The parties will also likely be required to submit redacted versions of any sealed documents, redacting only the information as to which sealing is justified; to the extent the parties can rely on such redacted exhibits at trial, which would moot the need to seal them, they should do so.

SO ORDERED.

ENTERED:  February 27, 2018

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court